Everyone ready? Okay. All right, then you can proceed. Good morning. Good morning, Your Honors. May it please the Court, Lenore Elbert for appellants, Joanne Anderson, et al. This is a homeowner case that has already been before the Ninth Circuit and won a reversal in order to plead negligence. We did replead negligence. The Court dismissed that claim, but allowed us to plead a Rosenthal Act claim, which then we did add to NationStar, which was a new party, because during the first appeal, Aurora transferred servicing from itself to NationStar. At that juncture, NationStar then had sent out three letters in one envelope. Each three letter was separately dated, all the same date of July 2012. And the first letter was a transferring notice. The second letter was a statement, like a bill. And then the third letter, though, had a debt collection asking them to validate the debt in writing. None of these were sent to counsel, so counsel was not aware of these letters. And so we added a Rosenthal claim stating that the third letter, the debt collection letter, violated the Rosenthal Act, incorporating 1692G. Well, I guess, but I think you argue that NationStar's July 15, 2011 debt validation notice letters violate Camacho, right? That's your argument, right? I'm sorry, I have a head cold. I didn't hear you. Oh, okay. So you argue that NationStar's July 15, 2012 debt validation notice letters violate Camacho, right? Are you with me? Yes. Which held that debt validation notices require borrowers to dispute a debt in writing to violate the FDCPA. And the Rosenthal is sort of the state corollary. But I don't find any evidence of such claim in your Fifth Amendment complaint or in your argument before the district court. Is there any reason that that should not be waived? Actually, it was in the Fifth Amendment complaint, the Rosenthal. And the court, what the court had said in its ruling, the court had said, well, I'm going to characterize these three letters as just a transfer, a notice of transfer of servicing rights. And that's what the court put in the minute order. So it was argued, if I heard your question correctly, and the claim is in the Fifth Amendment complaint. The Fifth Amendment complaint only had two claims, which was the Rosenthal Act and the wrongful death, which we've withdrawn. Now, as far as the second thing, the court had also said, well, I'm not going to let you replead as to Aurora, because there would be a statute of limitations. We argue that as to Aurora, to the extent that they may be liable, we didn't get to flesh that out. But to the extent that they may be liable, it wouldn't have any res judicata, because the Third Amendment complaint was filed in 2011, which was a year before the Act actually occurred. Let me ask just a question. Let's assume for the sake of argument that loan servers do owe a duty of due care when reviewing applications for loan modification. Why doesn't your negligence claim fail anyway? Because you did not plead facts showing that loan modifications would have been granted but for defendant's conduct. The temporary payment plans, agreements upon which plaintiffs relied to claim they would have received loan modifications, also required them to submit particular documents concerning their income. As the district court found, plaintiffs have not alleged that they submitted these documents, and therefore have not alleged that defendant's conduct caused plaintiffs not to receive loan modifications. What is your answer to that? Our answer for that, because it's a good chess game. If at the end of the day, if we were forced to actually plead that, the claims would be so individualized that they would probably be able not to certify the class on that basis. So what we pled instead was violations under HBOR and the HAMP guidelines. Because under the dual tracking itself, under HBOR, is considered now unlawful. And under the Alvarez case, which was also decided before HBOR, which actually occurred before HBOR, the mod occurred before the HBOR was in effect, it said you still can plead a duty under negligence and you can still have a negligence theory using the fact that now dual tracking is considered unlawful in California. So on a class-wide basis, rather than going through every single element, we have to look at it under a different lens, something that's easier, that's not going to be so complicated that we have to look at every single individual HAMP modification application. And similarly, under 9.5-1 and 9.5-2 of the Making Home Affordable guidelines, they made it very clear that once you pay those three TPP payments, basically what the government wanted to show, prove, is that this loan can be affordable. And we did plead and allege that each borrower was pre-qualified. So maybe in other instances and maybe with other banks or servicers, they might send out a TPP without pre-qualifying them, but we did plead that every single person was actually pre-qualified over the phone. So the TPP that they received said that we will modify you after you pay these three TPP payments, and so long as everything verified is true. So our ---- Well, so, yeah, but you have to put documents. You have to ---- there's all sorts of things. I mean, it's not ---- it's not only make the three payments and done. Then you have the modification. That's an oversimplification. Correct. It is an oversimplification. Okay. But that's, I think ---- But we did plead ---- We don't tend to oversimplify here. We did plead that they did pre-qualify, and we did plead that they made their payments, and we also showed that in each and every instance, they were given a different program. So it wasn't that in this instance, which is unusual from some of the other bank servicers, you see the borrowers going through one program, through another program, through another program, and being enticed while they're being dual-tracked for over a year. After the three-month period, especially here in California, it's so important to either deny that loan modification so that the borrower knows what to do or what steps to take next. And that's why HAMP ---- Okay. The bottom line, though, is the California Supreme Court hasn't ---- we've got conflicting decisions. The California Supreme Court hasn't spoken, has had an opportunity. It decertified one case. It's denied review on other cases. There are cases that did not seek petitions for review. And so you got sent back after Jolly came out. But Jolly involves construction loans. Now you've got another case out there called Luares, and that seems to me ---- I'm going to argue and tell me why not. I mean, a construction loan is different than the type of loans that you're talking about. And Luares deals much more closely with the type of loans you're talking about, and Luares says there isn't any duty. Well, actually, if you shepherdize Luares, and you can see that it says Alvarez, which said that there is a duty, actually follows Luares, and I'll explain why. Well, see, the problem, though, in California, because I was a California justice on the court of appeal, everyone can do what they want until the Supreme Court tells you otherwise. And the Supreme Court hasn't said otherwise, so we have to ascertain what we think the California Supreme Court could do. We could certify this, but I don't think they'll take it. And the reason I don't think they'll take it is they've not been taking anything. Either they've been depublishing or they've been denying review or whatever. They seem to not really want to talk about it yet. So ---- I haven't personally taken any of my cases up on negligence theory, tried to, before the California Supreme Court. But let me explain why Luares and Alvarez are the same. Luares never alleged that they were induced or coerced to miss three mortgage payments. In this case, the plaintiffs have alleged, in each and every instance, that they were instructed and directed to miss the three mortgage payments, that they qualified, but in order to be eligible, that they had to miss the three payments. In Alvarez ---- Now, did I hear you say Luares and Alvarez have the same holding? Alvarez, Luares, when you shepherdize Luares, it says that Alvarez actually follows Luares. And I'll explain why. I was counsel on the Luares case. Well, one says duty and the other says no duty. The conclusion is different, but for a different reason. In Luares, there was never any allegation ---- They don't hold the same thing, if you can distinguish one from the other. But they're different, aren't they? They're not the same district, either. They're not the same district. Okay. But Luares concedes that there could be a duty. The duty comes when the bank either ---- And then they clarified it in Majd, which just came out on January 14th. And I suppose, considering we were opposing counsel on that case, we should have probably told the court. But both counsel are aware of it, because we were counsel on that appeal. It's a published opinion. They cite Luares, and they reaffirm ---- Maybe you could give us that case, because I didn't ever see it. That's what 28J letters are for. Right. We should have. It came out on January 14th. I wasn't sure that we would get this close on the issue. What's the name of the case? It's Majd v. Bank of America. Majd? M-A-J-D, 221 Calat 4th, 49. It was published on January 14th, 2016. The conclusion there was that negligence was not found. They still found for the homeowner on other basis. However, it did reaffirm that if the bank or servicer exasperates or causes the default, the one or the other exasperates or causes the default, then there's a duty. And it found in that case that the servicer did not exasperate or cause the default. Luares, the same thing. Luares, they said, well, here the bank did not direct the Luareses to miss the three payments, so we're not going to find a duty in this case. In other words, what you're trying to tell me is that you distinguish those two cases not on construction loan versus residential loan but on a different basis. Correct. I understand that argument. Okay. If I don't agree with that argument and I say residential loans are different than construction loans, and that is the distinguishing characteristic, do you lose on negligence? I still shouldn't lose on negligence, and this is the reason why. That's my question. Okay. The reason why is because when we're supposed to use the Biaconga factors, California Supreme Court ruled on this just as general law a long time ago, it's a case-by-case decision. So every case stands on its own. And here Judge Selma did not go through the five Biaconga factors. He did not go through that in the minute order. So do I remand to have him do it, or can I go through them? You can go through them because it's as a matter of law, and this is de novo review. Or the court has the discretion to remand and have Judge Selma do it. But since this is de novo review on this issue and it is one as a matter of law, this court of appeal can do that. That is what Alvarez did, and Alvarez reversed in the state court, didn't leave it for a leave to amend or for the trial court judge to go through. These are the six factors? Yeah, the factors, transaction intended to affect the claim. I've got them down. They're the ones in, what did you call it? The Biaconga factors. Biaconga. I didn't say that in Idaho, but I'm from Idaho. So I know at least what you're talking about. Okay. Do you want to reserve time for rebuttal? Yes, please. Thank you. Thank you. Good morning. Good morning. Karen Saccone on behalf of the respondents of Aurora and Nation Star. Well, I can see where you're going with some of the issues, so I'll try to address them directly. But we did not get into the issue of the HOLA preemptions. So I'll address that as well. So is HOLA a consensus or is that the pronunciation? HOLA is the pronunciation that I most frequently hear. Okay. So you win. May I just ask a question at the beginning? Why doesn't the existing relationship between a lender and a borrower seeking a loan modification present a meaningful, distinct scenario when the borrower initially applies for the loan? Are you asking with respect to the duty? This regards the duty of care that is owed. So with respect to the Nymark case, it's very clear that a lending institution does not owe a duty of care to the borrower at origination because the lender is a business. It's an arm's length negotiation of a contract. There is no duty of care required there. In Luares, the court went one step further to explain that a loan modification, in general, is no different than originating a loan because, again, they're in the business of lending. And as Nymark says, as long as the conduct is in the context of lending activity, then there is no duty. Well, as I read Alvarez, it seemed to me the California Court of Appeal held that once a loan servicer agrees to consider a loan modification, the loan servicer owes a duty of care when reviewing the application. The court intimated that unlike with an initial loan application, when a borrower seeks a loan modification, the parties are no longer in arm's length transaction and should not be treated as such. That's where we get the via conga factors that should be considered. Some cases, like Luares, find one way, and Alvarez, as you've noted. I couldn't find them. I don't see the consistency that Appellant's Counsel is saying. I find them as two different ways we could go. I agree with Your Honor. And I still find that California Supreme Court hasn't told us what they're going to do. Correct. And so looking at the via conga factors, the first factor is the most critical one for consideration in this particular context about loan modifications. The first element is the extent to which the activity is intended to affect the plaintiff. Now, it's very persuasive, and many of the courts have found that a loan modification affects the plaintiff because they won't be foreclosed on. But it misses the entire point of a loan modification. And as briefed in our papers, the loan modification is an obligation the loan servicer has to the investor. A loan modification considers the net present value of the loan, whether you keep the loan as is and let it go into default, or whether you modify it and take a lesser amount, and whether that's a better investment. Your point is one that I'm listening to, because it's easy to look at it and say that the loan modification lets someone stay in their house as opposed to being kicked out on the street. Correct. But you're saying that isn't the way that you look at the first prong? Correct. The first prong really is something that should be considered as an investment. The loan servicer has to consider the investor's interests and the investor's guidelines of whether or not they can modify the loan. They don't have control over whether or not they can modify the loan. They have HAMP guidelines they might have to be working under, which specifically require an analysis of net present value. That is an investment calculus. That is not a calculus of whether or not you can keep the homeowner in the home. That is not the purpose of the loan modification. That is not the extent to which the transaction was intended to affect B. In other words, what you're suggesting is as to the first factor, we are really looking at what is the role of the loan servicer. Correct. What does the loan servicer do? And under California law, the loan servicer has nothing to do with the person who has the house. It has all to do with the bank or the one who is making the loan to the person. That's what you're suggesting. That's what I'm suggesting. And if you look at NIMARC and the position that as long as the lender is and a loan modification is a lending activity, they are trying to determine the best way of keeping this investment viable. Let me change just a little bit, if Judge Nelson will allow me to do it. I know she asked the last question, and I'm not trying to interrupt where she was going.  But I kept saying to myself, so what? What if Alvarez is good law, which I think was Judge Nelson's question once before. So what if it is? What do I have in this record to show that Andersons had all qualified to receive loans or would have received them? And now counsel responds, well, if I'd have done that, I wouldn't have had a class action. Is that a valid consideration? I don't believe so, Your Honor. Okay. Tell me about that. And I believe Judge Nelson correctly pointed out that even if you found a duty, you wouldn't find negligence here because nowhere in the complaint do they allege that they would have qualified for the modification. And nowhere, and we're at the fourth amended complaint for the negligence cause of action, nowhere in the fourth amended complaint does it allege that they provided the documents that are specifically required, and it does allege that in the complaint. Well, she said they prequalified and they made the payments, so that's good enough. Prequalification is an overstatement. Financial information is provided by the borrower over the phone and is unverified. That is why documentation is needed to verify the financial information. There is a case addressing this, the duty issue, and I can't recall the citation at the moment, but they specifically address that issue that there is no duty to rely on verbal financial information to modify a loan. That would be ludicrous because anybody could make up how much they make. But she also responded that this was a class action and that they couldn't deal with each individual member of the class, whether they should produce documents or should not produce documents. What is your response to that? They were given ultimately six opportunities to plead their case. If they cannot plead each element, regardless of whether it's a class action, that cause of action cannot survive. Well, it seemed to me that what counsel was saying is if I had to do this on every litigant, I couldn't have a class action. So to this old judge, it says I won't make as much money. That doesn't seem to be a very good reason not to plead what you've got to plead. So that's why I wanted you to respond. I agree, Your Honor. There are reasons why class actions are certified, and you go through the process of certification, is to make sure that all the elements are the same. And if she's saying that she left elements out that weren't the same in order to achieve a certification, that's almost a falsity to the court. On a less happy note for you, I have difficulty seeing how NationStar is not a debt collector. Let's address that. Right on one of the things it said, NationStar is a debt collector. This is an attempt to collect a debt, and any information obtained will be used for that purpose. You're correct, Your Honor, and we've considered that, because under the federal Fair Debt Collection Practices Act, there are certain notification requirements that are followed by the lenders and loan servicers. Other states do not have the equivalent of the Rosenthal Act or the equivalent of the comprehensive nonjudicial foreclosure scheme that California has. And if you look at the Gomes case, it's very clear that in California, the nonjudicial foreclosure scheme is meant to be comprehensive to deal with everything regarding the payments on a loan, even after default, all the way through foreclosure. And under Gomes, it says that no additional requirements should be imposed, that the scheme is very clear. Well, but even if NationStar is a debt collector, do you lose? We don't, Your Honor. So even if you were to find that NationStar, and we've cited cases why a loan servicer is not a debt collector and why a residential mortgage is not a debt, and therefore the activities in collecting on a mortgage are not debt collection. But getting past that into whether there was a violation, I think it was Your Honor correctly pointed out, there's nowhere, and now we're on the fifth amended complaint, there's nowhere in there that they've pled a violation of section 1692 GA3, which was first brought up in their appellate briefs. Is this the Camacho argument? This is the Camacho argument. Well, she said it was in the fourth amended complaint or something. It is not. It is not alleged. In the fifth amended complaint, the complaint that was at issue when the court dismissed the Rosenthal claim, they alleged under 1692E and 1692F with respect to collecting a debt, you cannot use fraudulent or misleading representations or unfair means. And so if you look at the Hart case and specifically, I need to take a look at the section, 1692G subsection E, notices are not considered debt collection. So a federal or state required notice, such as the RESPA notice that was provided or a validation of debt notice, are not considered debt collection. So therefore, they cannot be a violation of section E or F. You address this case nobody's ever heard of until today, Modge, and how that applies. Your Honor, the position, the ruling in Modge really had to do with whether dual tracking prior to the Homeowner Bill of Rights could be considered unfair competition. That is not relevant to what's at issue here. So I would submit to the court that it's simply irrelevant. With respect to the violation elements, I believe we briefed that under the bankruptcy discharge element that they'd raised, there were no bankruptcy discharges of the debt. So that's not even at issue. And then the third issue they raised was sending the notices directly to the borrower. And I believe the Santoro case by the Ninth Circuit directly addresses that, that if it's a notice that's required by statute, then the FDs. Well, I guess what I would ask, in light of the fact that the FDCPA is a strict liability statute, Gonzales v. Arrow, why are the factual allegations in the Fifth Amendment complaint not sufficient to assert a Rosenthal Act claim against Nation Star on the theory that the July 15th 2012 letters overstated the amounts due on the mortgager's debts, even if Nation Star unknowingly obtained overstated debt amounts from Aurora? So on the validation of debt, the purpose of a validation of debt is when there's a transfer, to make sure that the debt that the new servicer is receiving is the correct number. So a validation of debt notice allows, and it's under Section 1692 G.A. 3, it allows the party to dispute that amount. So the whole point is to put a number out there and make sure it's correct. So by definition, it not being correct is not a violation. In fact, the Hart case, as well as 1692 G.A. subsection E, specifically say a notice cannot be the basis for a violation. It is not a debt collection. So do you think, is there any point in certification to the California Supreme Court? On any particular? The issue of duty. Are you familiar with there's a section where we can certify issues? Because we have to follow state court. We have to ascertain what would the California Supreme Court do. I think it is a very important area in the loan modification context that hasn't really been determined by the California Supreme Court. I think that Luares has been. I agree it's important, but they seem to be purposely evading it. They've had a chance to take it up. And they're very cherry about picking what they will take from us on a certification. So that's why I was asking you. They may be looking at it as a case-by-case determination. All right. So my guess is better than yours on that. Yes, Your Honor. Any further questions? All right. Thank you for your argument. That's the COLA preemption. There is a case that is directly on point on the trigger date. We don't have any more questions. That's what we just said. So thank you. Thank you. Okay, thanks. Is this a case that wasn't in your brief? Yes. Do you want to ask a question? No, no, I don't. I mean, if there's a case that I look at that I haven't looked at on the COLA, I would be glad to know it, but you can submit that. No, I think she was talking the issue of COLA. Generally, we didn't talk about it. That was not a new case, right? Come back to the podium. In the reply brief, they raised the issue of the proper trigger date. Right, but neither of you briefed that very well. So if we only get to that if you don't win otherwise, right? Correct. All right. And I don't think either of you briefed it very well. So I don't know if we get to that issue. I don't know that we get to it either. I just didn't want to. We may request supplemental briefing if we feel we have to get to it. That has to do with whether the Dodds-Frank and what do we use as a pre and whether all of that. There is a case directly on point. There are also statutes in the Fed Recs directly on point, and I wanted to cite those to the Court. But there isn't, and the Seventh Circuit is considering this issue, correct? Well, we have a case, if you don't mind. I'm asking the question now. I don't know what the Seventh Circuit is considering, but we have a case, a federal sub-case here in California. Is it a Ninth Circuit case? It's a district case. Yes. Okay. All right. Thank you. Before affirming a dismissal of this case, which is one of the very few survivors to help homeowners in this area, the court then should ask first a certification to the California Supreme Court because it is important. You just thought of it because I did? Yes. Okay. If it was so important, everyone should have been thinking about that before. That's one of my – And I thank the court for its guidance in that area. ESA was not about holding money for investors or for making the financial institutions richer. ESA in 2008 was enacted to help homeowners save their homes. And the whole point of HAMP was part of ESA of 2008, which Congress enacted. As a judicial branch, judicial branch is supposed to take what Congress enacted and try to interpret it in order to fulfill the policy, the policy that was happening in this country. When this case was – That's certainly disputed, what you just said. Some Supreme Court justices would say absolutely wrong. Maybe. But in a utopian society – Okay. We're going to go utopia. In a utopian society, this is its purpose. There are no elements. There's no element. There's no case law that says it's an element in order to plead a negligence claim that all of the documentation that a servicer required was submitted. There's not a case that has said that. That's a part of damage, isn't it? It's an argument. It's a part of damages. In every tort issue, we've got to have a few damages, don't we? That's one of the elements. Right, but here we already have damage because we have a long delay period. We do not have a timely and accurate modification, whether it was denied or whether it was approved. If there wasn't a damage – Is there a California case that suggests that the amount of time taken, other than in determining whether you would get insurance or not, that the timeliness of the determination of whether to do something in a commercial context is damage? Well, in the homeowner context, yes. That's what you're alleging. I couldn't find one in that context either. What I'm suggesting is, unless we're going to look at bad faith, which is an insurance context, we have a commercial transaction here. The amount of time you take to make an acceptance to an offer or make the offer has never been subject to a tort problem. If it meant a loss, for example, yes. Actually, in the insurance context, if – I said other than insurance. Okay, other than insurance. I know what insurance is about. But in that part, it's a little bit different context. Timing in a lot of situations, parental rights cases. If you have a delay in a parental rights case, that would cause harm. Well, and if you delay taking a defendant for trial, they have recourse against the prosecutor and dismissal. But he's asking – but, you know, there's a lot of different – what about your case? In your facts, do you have a case? That's what he's trying to ask you. Part of Alvarez dealt with that. They talked about the untimely denial. Covello, before this Ninth Circuit, Covello versus Wells Fargo Bank, we had the same thing. The district court in the Northern District of California in – I think it was Madrigas' case. They had the same thing. The HBOR talks about timelines, and so does the HAMP guidelines. The HAMP guidelines say that you must give a denial after the 90 days, and I think that was 9.1 on November 3, 2009. We've had many, many HAMP guidelines that have come out from March 2009 to the present. We have also then the HAMP guidelines, which I had focused with this court to try to make it more class action. Okay, you need to wrap up. You're already two minutes over. Okay. So one minute and you wrap up. As far as pleading five times, the LIBOR loan cases, they've pled more than five times. They've even refiled cases there over in the LIBOR MDL. So that should not shirk this court from thinking that if there's an amendment issue. HOLA does not apply. If you need supplemental briefing, that's fine. But the duty issue is important. This is one of the surviving homeowner cases. The bank shouldn't be able to win in the whole country. And what will happen if this case dies, there's only one or two left. The banks will win, and that was not part of ESA. Thank you very much. All right. Thank you both for your argument. This matter will stand.
judges: D.W. Nelson, Callahan, N.R. Smith